United States District Court
Southern District of Texas
**ENTERED**
June 13, 2018
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JONAS YBARRA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. B-17-174** |
| | § | |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMISSION, ET AL.,** | § | |
| **Defendants** | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On August 31, 2017, Plaintiff Jonas Ybarra ("Ybarra") filed a complaint against the Texas Health and Human Services Commission ("THHSC"), Adela Gonzalez ("Gonzalez"), Jay Wong ("Wong"), Jorge Perry ("Perry"), Fernando De Luna ("De Luna"), and Mario Gomez ("Gomez"), alleging employment retaliation and civil rights violations. Dkt. No. 1. On November 1, 2017, Ybarra filed an amended complaint, Dkt. No. 22, which is the operative complaint in this case.

All of the defendants have filed motions to dismiss. Dkt. Nos. 25, 27, 42. Those motions have been fully briefed and are currently pending before the Court.

After reviewing the record and the relevant case law, the Court recommends that the motions to dismiss be granted. As to Ybarra's claims of retaliation, discrimination based on sex, violations of the Prohibited Personnel Practices Act, and civil right claims under <u>Bivens</u> and § 1983, Ybarra has failed to state a claim upon which relief can be granted. As to Ybarra's claim of unlawful conversion, the Court lacks subject matter jurisdiction.

## I. Background

### A. Factual Background

Ybarra worked as a deportation officer for U.S. Immigration and Customs Enforcement ("ICE") from July 2008 until December 2014. Dkt. No. 22, p. 4.

Around August or September 2014, Ybarra testified against one of his supervisors, Jorge Perry, in administrative investigations conducted by ICE's Office of Professional Responsibility. Dkt. No. 22, p. 4.   Ybarra informed the investigators that Perry misrepresented his position to acquire weapons from the United States Army and accused Perry "of smuggling a M4 rifle on a commercial airliner." Id.   Ron Spivey, one of the investigators, promised Ybarra "that there would be no retaliation for the offering of his testimony." Id.  Ybarra also gave unspecified testimony against co-worker Steven Mock. Id, p. 5.

Ybarra alleges that he was subject to retaliation because Perry and other ICE agents "have sabotaged Mr. Ybarra's chances of obtaining employment." Dkt. No. 22, p. 4.  Ybarra has applied for "many" law enforcement positions "for which he possesses the requisite skill, experience, education, and training," but was not hired for any of them. Id, pp. 4-5.  Ybarra has not identified the positions he applied for, nor the exact actions undertaken by Perry or any other federal agent to sabotage his employment prospects.

On March 21, 2016, Ybarra was hired to work as an investigator for the Texas Health and Human Services Commission. Dkt. No. 22, p. 5.  The complaint states that Ybarra had a "probationary period" at the outset of his employment. Id, p. 8.  The Defendants note that the probationary period lasted six months. Dkt. No. 27, p. 11.  Thus, Ybarra was employed in a probationary status from March until September 2016.  Ybarra asserts that from March 21, 2016 until June 23, 2016, "ICE agents communicated with the Texas Health and Human Services Commission and falsely told them that Mr. Ybarra had lied on . . . [his]  job application as well as on his resume." Dkt. No. 22, p. 5.  Ybarra does not identify the agents who made these statements or the exact wording of the statements.

Ybarra asserts that on June 1, 2016, "he reported that another employee was violating the commission office leave policy." Dkt. No. 22, p. 7.  Ybarra does not identify the employee or how that employee was violating office policy. Id.

2

On June 23, 2016, during Ybarra's probationary period, Texas Health and Human Services terminated Ybarra's employment. Dkt. No. 22, p. 6.  Ybarra claims that, when he "was fired he was not allowed to remove his personal possessions, including private documents from his office." Id.  Ybarra claims that these items were never returned to him. Id.

One day later, on June 24, 2016, one of Ybarra's ex-supervisors at THHSC– Adela Gonzalez – instructed Texas Health and Human Services Investigator Jay Wong to "investigate Mr. Ybarra's actions during his tenure as an employee at Texas Health and Human Services Commission." Dkt. No. 22, p. 7.  Ybarra asserts that this investigation was "pretextual and conducted ad hoc and in retaliation in order to justify . . . termination." Id., pp. 7-8.

In July 2016, Wong spoke with Perry and Mock about Ybarra. Dkt. No. 22, p. 5-6. Ybarra alleges that these actions by Wong were done to obtain negative information "through personal friends or contacts, without proper legal process." Id.  He further alleges that Perry and Mock gave "false and harmful" information to Wong in retaliation for Ybarra's earlier testimony. Id.  Ybarra claims that Perry did not disclose to Wong that he "was a biased party who should most likely not be considered a unprejudiced source of reference for Mr. Ybarra's employability." Id.

While a copy of Wong's investigative report has not been entered into the record, Ybarra asserts that it "revealed that Vicky Corona, a[n] employee of Texas Health and Human Services Commission, communicated with Defendant Gonzalez indicating her belief that Mr. Ybarra showed signs and characteristics that suggest problems with female authority." Dkt. No. 22, p. 8.  Attached to the complaint was an exhibit: an email to Gonzalez from Michael Battles, a manager in the Texas Health and Human Services Office of Inspector General. Dkt. No. 22, pp. 21-22.[1]

---

[1] In deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court can consider the complaint and any exhibits attached to the complaint. Lone Star Fund V (U.S.), L.P. v.

The email, which is dated June 7, 2016 – two weeks before Ybarra's dismissal – is a "recap of the list of concerns that [Gonzalez] shared with [Battle] regarding new hire Jonas Ybarra." Dkt. No. 22, pp. 21-22.  The email does not state, or even raise the inference, that Corona told Gonzalez that Ybarra "showed signs and characteristics that suggest problems with female authority." Id.  Rather, the email states that Ybarra traveled with Corona "to assist on home visits and observe client interviews," but that Corona had to ask Ybarra several times "not to interrupt the interview." Id.  When Ybarra asked why he was going if he wasn't going to conduct any part of the interview, Corona reminded him that he was merely there to observe and "to learn policy and procedures in his new position." Id.  Corona also told Gonzalez that Corona  believed Ybarra "used intimidation tactics during interviews with clients," repeatedly standing over them, instead of sitting next to them. Id.  Corona also noted that Ybarra was carrying a weapon, based on a civilian personal handgun permit, but appeared to "purposely make the handgun visible under his jacket during interviews with clients in the office," possibly creating the false perception that the investigators were "representing themselves as law enforcement." Id.

Corona also stated that it appeared that Ybarra was using his phone to record the interviews without informing the clients, which she believed to be unprofessional. Dkt. No. 22, pp. 21-22.

On one trip, Ybarra was scheduled to meet with "a federal attorney" regarding one of Corona's cases, but Gonzalez decided to handle that case in a different manner that would not require the assistance of the federal attorney. Dkt. No. 22, p. 21.  When Corona informed Ybarra of Gonzalez's decision, Corona said that Ybarra "raised his voice at her and said that she should not have contacted [Gonzalez] about this and she should have spoken with [Ybarra] and that now he was going to have to call [Gonzalez] to fix the problem that [Corona] created." Id.  Once they returned to the office, Ybarra again raised his voice and

Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

4

pointed his finger at Corona, "asking how she got involved in the case." Id.  When Corona informed him that the case was "her case," Ybarra responded that "he was in charge of all things federal." Id.  Gonzalez told Battles that Gonzalez had "made it clear from the day [Ybarra] was hired that he is not a Lead Investigator so he has no supervisory authority over other investigators." Id.

Ybarra claims that Corona "served as the cat's paw that unfairly stereotyped and influenced Defendant Gonzalez into believing that Mr. Ybarra was an unruly masculine male undeserving of employment at Texas Health and Human Services." Dkt. No. 22, p. 8.

**B. Procedural History**

On August 31, 2017, Ybarra filed a complaint against THHSC, Gonzalez, Wong, Perry, De Luna, and Gomez. Dkt. No. 1.  Ybarra made six claims: (1) unlawful retaliation by Gonzalez and Wong, because they fired him for reporting that another employee was violating the leave policy; (2) that Gonzalez, Wong, Perry, De Luna and Gomez conspired to interfere with Ybarra's civil rights by acting in concert to terminate his employment; (3) violations of the Prohibited Personnel Practices Act by Perry, De Luna and Gomez for working to get Ybarra fired from his job at THHSC; (4) Bivens claims against Perry, De Luna, and Gomez, for misusing "the power they possess by virtue of a federal law, in pursuit of purely personal objectives to deny Mr. Ybarra civil rights;" (5) civil rights violations under 42 U.S.C. § 1983 by Wong and Gonzalez for acting in concert to have Ybarra fired; (6) conversion claims against Gonzalez and de Luna for not returning Ybarra's personal property after firing him. Id.

On October 10, 2017, THHSC filed a motion to dismiss. Dkt. No. 14.  On October 13, 2017, Wong and Gonzalez filed a motion to dismiss. Dkt. No. 16.

On October 31, 2017, Ybarra filed a motion for leave to file an amended complaint. Dkt. No. 19.

On November 1, 2017, the Court granted the motion for leave to file the amended complaint. Dkt. No. 21.  The Court also dismissed the pending motions to dismiss as moot

in light of the amended complaint. Id.

The first amended complaint is the operative complaint in this case. Dkt. No. 22.  In that complaint, Ybarra re-urged his prior claims from the first complaint, but also added a claim of sex discrimination against THHSC, claiming he was fired based on his gender. Id., p. 22.

On November 22, 2017, THHSC filed a renewed motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. No. 25.  THHSC asserts that sovereign immunity bars any § 1983, § 1985, or state law conversion claims against it, depriving the Court of subject matter jurisdiction over those claims. Id.  THHSC further asserts that Ybarra has failed to state a claim upon which relief can be granted for any of his employment discrimination claims. Id.

On that same day, Gonzalez and Wong also filed a motion to dismiss, arguing that Ybarra failed to state a claim upon which relief can be granted for any claims made against them. Dkt. No. 27.

On December 13, 2017, Ybarra filed responses to the motions to dismiss. Dkt. Nos. 31, 32.  As to Gonzalez and Wong, Ybarra argues: that they are not entitled to qualified immunity; that he has stated a claim upon which relief can be granted; and that he can maintain a claim for conversion against them in their individual capacities. Dkt. No. 31.  As to THHSC, Ybarra clarifies his complaint to state that he is only bringing Title VII retaliation and gender-based discrimination claims against THHSC. Dkt. No. 32.  Ybarra asserts that Title VII "clearly abrogated the State of Texas' Eleventh Amendment immunity;" that he exhausted all necessary administrative remedies prior to filing the suit; and, that he stated a claim upon which relief can be granted. Id.

On April 30, 2018, De Luna, Gomez, and Perry, timely filed a motion to dismiss. Dkt. No. 42.  Those defendants argue that Ybarra cannot maintain a § 1985 because whistleblowers are not a protected class under that statute; and further that they are all entitled to qualified immunity. Id.  Those Defendants also assert that termination of Ybarra's state employment cannot, by definition, violate the federal Prohibited Personnel Practices

Act. id. They also assert that none of their alleged actions fit within the universe of actions that can form the basis for Bivens claim. Lastly, De Luna argues that, because he was acting within the scope of his employment, any state law conversion claim is really a claim against the United States and Ybarra has not sought administrative relief under the FTCA prior to filing suit. Id.

On May 21, 2018, Ybarra filed a response, arguing that De Luna, Gomez, and Perry are not entitled to qualified immunity. Dkt. No. 44. Ybarra further argues that he has pled sufficient facts to support his § 1985, Bivens, and Prohibited Personnel Practices Act claims. Id. Lastly, he argues that his conversion claim against De Luna survives, because he alleges that "De Luna is sued individually for acting beyond the scope of his employment." Id.

On May 31, 2018, De Luna, Gomez and Perry filed a reply brief.

## II. Applicable Law

### A. Jurisdiction

The threshold question, before considering the substance of any claim, is whether the court possesses jurisdiction over the claim. This is the case, because federal courts are courts of limited jurisdiction, whose authority exists only within the boundaries established by Congress and the United States Constitution. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999). A plaintiff bears the burden of proving jurisdiction. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

In determining whether jurisdiction exists, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). Conclusory allegations or "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Wells v. Ali, 304 Fed. App'x. 292, 293 (5th Cir. 2008) (quoting Fernandez–Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).

**B. Motion to Dismiss under § 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief.  It is not a procedure for resolving contests about the facts or merits of the case . . . . [T]he Court must take the plaintiffs' allegations as true, view them in a light most favorable to plaintiffs, and draw all inferences in favor of the plaintiffs." Askanase v. Fatjo, 828 F. Supp. 465, 469 (S.D. Tex. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991)).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Consistent with this requirement, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 589.  "[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." McConathy v. Dr.Pepper/Seven Up Corp., 131 F.3d 558, 561 (5th Cir. 1998).

Whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

8

### C. Retaliation

In order to "establish a prima facie retaliation case," under Title VII, a plaintiff must plead facts showing that he (1) "was engaged in protected activity"; (2) "was subjected to an adverse employment action"; and (3) "there was a causal connection between the protected activity and the adverse employment action." Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs, 810 F.3d 940, 945 (5th Cir. 2015).

State actors and agencies do not have Eleventh Amendment immunity from suit for Title VII claims. Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 n. 1 (5th Cir. 2002) ("Congress has clearly abrogated the states' Eleventh Amendment immunity in enacting Title VII.").

### D. Sex Discrimination

A plaintiff claiming sex discrimination under Title VII can prove the claim in one of two ways: (1) mixed motive or (2) pretext. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Ybarra has specifically sought relief alleging a mixed motive. Dkt. No. 32, p. 5.

Under a mixed motive analysis, the plaintiff "must demonstrate, by either direct or circumstantial evidence, that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons." Id. The plaintiff does not necessarily have to show that the supervisor who terminated his employment had a discriminatory animus, if he can show that the decisionmaker "was influenced by others who harbored discriminatory animus." Id., at 653. This type of claim is also known as a "cat's paw" claim, where the formal decision maker merely served as the conduit – or cat's paw – to effectuate the discriminatory animus of a subordinate. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 227 (5th Cir. 2000) (citing Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990)).

"If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." Russell, 235 F.3d at 226. To invoke

9

a "cat's paw" claim, the plaintiff must show that (1) the co-worker exhibited discriminatory animus and (2) that same co-worker "possessed leverage, or exerted influence, over the titular decisionmaker." Roberson, 373 F.3d at 653.

### E. Civil Rights Conspiracy

The federal statute that prohibits civil rights conspiracies has three separate sections. 42 U.S.C. § 1985.  Two of those sections are relevant here. Section two prohibits a conspiracy "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified." 42 U.S.C. § 1985(2).  Section three prohibits a conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

"[I]nterference or obstruction of administrative proceedings is not redressable under section 1985(2)." Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 758 (5th Cir. 1987). Furthermore, this section – indeed, the entire statute – only protects against racial or class-based animus; it does not serve to protect whistleblowers. Bryant v. Military Dep't of Mississippi, 597 F.3d 678, 687 (5th Cir. 2010) ("we have previously rejected the argument that 'whistleblowers' are a protected class for purposes of § 1985 claims.").

### F. Prohibited Personnel Practices Act

As relevant here, federal employers may not take certain personnel actions against an employee, or an applicant for employment, based upon that person's prior disclosure of "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8).  This statute only applies to employment with certain federal agencies. Bunce v. Computer Scis. Corp., 113 F. Supp. 3d 234, 237 (D.D.C. 2015); see also 5 U.S.C. § 2302(a)(2)(C) (defining which federal government agencies the statute does and does not apply to).  If the plaintiff "is a former employee and is not an applicant for employment with the [federal] government," then this

10

statute is inapplicable. <u>Amarille v. Office of Pers. Mgmt.</u>, 28 F. App'x 931, 933 (Fed. Cir. 2001).

**G. Section 1983**

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

<u>Id.</u>

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n. 3 (1979).  To prevail upon a § 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. <u>Whitley v. Hanna</u>, 726 F.3d 631, 638 (5th Cir. 2013).

**H. Bivens**

While 42 U.S.C. § 1983 applies to a defendant acting under color of state law, a different basis exists for claims against individual federal actors who may have violated a plaintiff's constitutional rights. <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 391-96 (1971).  <u>Bivens</u> actions are the federal analog to suits brought against state actors under 42 U.S.C. § 1983. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675-76 (2009).  <u>Bivens</u> is a judicially created remedy, where no other remedy exists under the law. <u>Bivens</u>, 403 U.S. at 396-97.  There is no "automatic entitlement" to a damages remedy under <u>Bivens</u>. <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007).  <u>Bivens</u> actions are limited to actions

11

against federal actors for constitutional violations of: the Fourth Amendment; the Due Process Clause of the Fifth Amendment; and, the Cruel and Unusual Punishments Clause of the Eighth Amendment. Correctional Svcs. Corp. v. Malesko, 534 U.S. 61, 67 (2001).

Expanding Bivens beyond its previously recognized boundaries is a "disfavored" remedy. Ziglar v. Abbasi, — U.S. —, 137 S. Ct. 1843, 1857 (2017).

**I. Conversion**

"The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." Stroud Prod., L.L.C. v. Hosford, 405 S.W.3d 794, 811 (Tex. App. 2013).

A plaintiff may not sue a federal employee for the "loss of property," if that employee was acting "within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). "[W]hether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred." Rankin v. U.S., 556 F. App'x 305, 308 (5th Cir. 2014) (citing Garcia v. U.S., 62 F.3d 126, 127 (5th Cir.1995) (en banc)).  The plaintiff bears the burden of proving that the federal employee was acting outside of the scope of his duties. Rankin, 556 F. App'x at 308.

**III. Analysis**

Ybarra has made wide-ranging claims against numerous defendants.  Despite his arguments to the contrary, Ybarra's claims of: (A) retaliation; (B) sex discrimination; (C) § 1985 violations; (D) violations of the Prohibited Personnel Practices Act; and, civil right claims under (E) Bivens and (F) § 1983; fail to state a claim upon which relief can be granted, for which reason they should be dismissed.  As to Ybarra's claim of unlawful conversion, addressed below as (G), the Court lacks subject matter jurisdiction, which mandates dismissal.

12

### A. Retaliation

Ybarra claims that THHSC retaliated against him for reporting another employee's misconduct regarding leave policy. Dkt. No. 22. Under the facts alleged, Ybarra fails to state a claim upon which relief can be granted, for which reason it should be dismissed.

As previously noted, Ybarra must plead facts tending to show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action and (3) there was a causal connection between the protected activity and the employment action. Porter, 810 F.3d at 945. Ybarra has not met this burden.

Ybarra's complaint fails to plead any facts showing that he engaged in a protected activity. "Only those activities listed under Title VII are protected from retaliation." Jimenez v. Potter, 211 F. App'x 289, 290 (5th Cir. 2006). Title VII protects against employees facing retaliation because he or she "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3. Accordingly, "protected activity under Title VII must relate to discriminatory practices based on race, color, religion, sex, or national origin." Allen v. Envirogreen Landscape Professionals, Inc., 721 F. App'x 322, 327 (5th Cir. 2017), as revised (Dec. 7, 2017).

There are no facts in the complaint showing that Ybarra "opposed any practice" that related to "discriminatory practices based on race, color, religion, sex, or national origin." Id. Indeed, the only allegation in the complaint is that he reported misconduct by a fellow employee relating to the office leave policy. Dkt. No. 22. In his response to THHSC's motion to dismiss, Ybarra merely stated that he "engaged in protected activity," but does not specifically identify what the activity was or how it related to discrimination based upon race, color, religion, sex, or national origin. Dkt. No. 32, p. 3. This blanket assertion is insufficient to state a claim upon which relief can be granted. Wesley v. Scobee Foods, Inc., No. 3:12-CV-1836-K, 2013 WL 3324092, at *6 (N.D. Tex. June 28, 2013).

Furthermore, because Ybarra has not pled facts showing a protected activity, he also has failed – by definition – to plead any facts showing a causal connection between the

13

decision to terminate his employment and a protected activity. Baker v. Am. Airlines, Inc., 430 F.3d 750, 755 (5th Cir. 2005). Given these failures, Ybarra has failed to state a claim upon which relief can be granted and the claim should be dismissed.

### B. Sex Discrimination

Ybarra claims that he was the victim of discrimination based upon his sex, because Vicky Corona, a female co-worker, "unfairly stereotyped and influenced Defendant Gonzalez into believing that Mr. Ybarra was an unruly masculine male undeserving of employment at Texas Health and Human Services." Dkt. No. 22, p. 8. Once again, Ybarra has failed to state a claim upon which relief can be granted.

In order to state a claim upon which relief can be granted, under a mixed-motive theory, Ybarra must plead facts tending to show "by either direct or circumstantial evidence, that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons." Roberson, 373 F.3d at 651. Thus, Ybarra must plead some facts showing that THHSC had some "forbidden reasons" – such as terminating his employment solely because he was a man. Id. Ybarra can meet this standard either by showing that the decisionmaker possessed such animus or that there was another employee who exhibited discriminatory animus and that same co-worker "possessed leverage, or exerted influence, over the titular decisionmaker." Roberson, 373 F.3d at 653.

Ybarra's complaint alleges that Corona told Gonzalez – also a female – that "Mr. Ybarra showed signs and characteristics that suggest problems with female authority." Dkt. No. 22, p. 8. The complaint then references the email from Mike Battles to Gonzalez. Id. Despite its citation in the complaint, the email does not support the claim made by Ybarra.[2]

In the email, Battles, a male, recounts a "list of concerns" that Gonzalez had raised with him concerning Ybarra's continued employment. Dkt. No. 22, p. 21. In that list of

---

[2] As previously noted, the Court can consider the contents of the email in deciding the motion to dismiss because the email was attached as an exhibit to the complaint. Lone Star Fund, 594 F.3d at 387.

concerns, Gonzalez had listed several incidents involving Corona. Id.  Corona had reported that Ybarra had "used intimidation tactics during interviews with clients"; had appeared to "purposely make his [civilian] handgun visible under his jacket during interviews with clients in the office"; had recorded client interviews without permission; and, had acted as if he had "supervisory authority over other investigators." Id.

Additionally, other agents reported that Ybarra attempted to get them to join him – that is Ybarra – at Starbucks and a gun store during work hours, an impermissible use of personal time during work hours. Dkt. No. 22, p. 21.

Gonzalez told Battles that Gonzalez believed that Ybarra was "not making the adjustment from having been a federal agent to now being an investigator with General Investigations and [Ybarra's] integrity had been called into question." Dkt. No. 22, p. 21.

There is no evidence in the report that Corona ever told Gonzalez that Ybarra was an "unruly masculine male," or made any similar comments.  Moreover, Corona's reports do not show any discriminatory animus, but, instead they simply relay Corona's account of interactions she had with Ybarra. As such, Corona's statements show no direct evidence of discriminatory animus. Rodriguez v. Eli Lilly & Co., 820 F.3d 759, 765 (5th Cir. 2016) (defining direct evidence as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.").  Indeed, Ybarra has pled no facts showing direct evidence of discriminatory animus by any defendant or co-worker.

Furthermore, even assuming that Corona had any discriminatory animus, Ybarra has pled no facts showing that Corona acted as the "cat's paw" in effectuating Ybarra's termination.  To make such a showing, Ybarra must plead facts to plausibly show that Corona "possessed leverage, or exerted influence, over the titular decisionmaker." Roberson, 373 F.3d at 653.  Thus, while Ybarra's termination came from either Gonzalez or Gonzalez's superiors, Ybarra claims that Corona was the real decisionmaker and that the termination process was driven by her animus toward Ybarra, because he is male. Dkt. No. 22, p. 8.  The facts in the complaint and the email, however, do not support this claim.

15

It is not enough that Corona informed Gonzalez of her concerns; in order to serve as the "cat's paw," Corona had to exert influence over Gonzalez "in such a way as to co-opt her decision making." DePree v. Saunders, 588 F.3d 282, 288 (5th Cir. 2009).  There is no evidence that Corona's opinions were given "special weight" when deciding whether to terminate Ybarra's employment. Id.  Based upon the facts as pled – and shown in the email – this is not a case where the decision-maker merely relied "on the views of supervisors rather than her findings from an independent investigation." Id., at 289.  Instead, the email unequivocally shows that the statements by Corona were part of an independent investigation, undertaken by Battles and Gonzalez into Ybarra's suitability as an investigator. Simply put, Ybarra has not pled facts to make a plausible showing that his employment was terminated simply on the basis of Corona's reports to Gonzalez.  Given these failures, any "cat's paw" theory is not supported by the facts of the complaint or email exhibit.

Thus, Ybarra is – at best – left with only circumstantial evidence of discriminatory animus.  When a plaintiff attempts to use circumstantial evidence to prove a "mixed motives" Title VII claim, the plaintiff must "demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either: (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (internal quotations omitted).

While a plaintiff "need not make out a prima facie case of discrimination" to survive a motion to dismiss, the plaintiff "must plead sufficient facts on all of the ultimate elements to make [his] case plausible." Jenkins v. Louisiana Workforce Comm'n, 713 F. App'x 242, 244 (5th Cir. 2017) (internal quotations omitted).  Ybarra does not meet even this lenient standard.

In order to establish a <u>prima facie</u> case of sex discrimination, Ybarra must demonstrate that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was the subject of an adverse employment action; and (4) he "was treated less favorably than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." <u>Carr v. Sanderson Farms, Inc.</u>, 665 F. App'x 335, 337 n. 5 (5th Cir. 2016) (citing <u>Alvarado v. Tex. Rangers</u>, 492 F.3d 605, 611 (5th Cir. 2007)).

Ybarra has pled facts that he is a male, which is a protected class. <u>Junfei Li v. Univ. of Texas Rio Grande Valley</u>, No. 7:15-CV-00534, 2018 WL 706472, at *7 (S.D. Tex. Feb. 2, 2018) ("Title VII protects both males and females from sex discrimination.").  He has also pled facts showing it is plausible that he was qualified for his position, based upon his prior investigative and law enforcement experience.  Ybarra has also pled facts showing that his employment was terminated, which satisfies the requirement for an adverse employment action. <u>Valderaz v. Lubbock Cty. Hosp. Dist.</u>, 611 F. App'x 816, 822 (5th Cir. 2015) (Court "has always held" that termination is an adverse employment action).

At the same time,  Ybarra's claim falls short, because he has pled no facts showing that he "was treated less favorably than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." <u>Alvarado</u>, 492 F.3d at 611.  Ybarra has pled no facts showing that he was treated differently than a non-male under nearly identical circumstances.  Thus, Ybarra has not made a plausible claim of <u>prima facie</u> sex discrimination.

Accordingly, Ybarra has failed to state a claim of discrimination based upon his sex upon which relief can be granted.

### C. Civil Rights Conspiracy

Ybarra alleges that Gonzalez, Wong, Perry, De Luna, and Gomez – a group comprised of both women and men – conspired "to deprive Mr. Ybarra of his civil rights as secured by the United States Constitution in violation of 42 U.S.C. Sec. 1985." Dkt. No. 22, p. 9.  This claim is meritless as a matter of law.

Ybarra claims relief under § 1985(2) and § 1985(3). Dkt. No. 31, p. 8.  He claims that he is in a protected class of "whistleblowers." Id, p. 6.  As set forth earlier, the second section prohibits a conspiracy to retaliate against someone because they testified "in any court of the United States."  42 U.S.C. § 1985(2).  The third section prohibits a conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

As to the § 1985(2) claim, administrative proceedings are not considered to be "any court of the United States." Deubert, 820 F.2d at 758.  Thus, the protections afforded by § 1985(2) do not extend as far as Ybarra would have this Court go. Ybarra's testimony in the administrative proceedings and the investigations of Perry and Mock is not protected under § 1985(2). Deubert, 820 F.2d at 758.  In sum, Ybarra has pled no facts showing that the Defendants retaliated against him for testifying in federal court.

Furthermore, as to both the § 1985(2) and § 1985(3) claim, the statute only protects against racial or class-based animus; it does not extend to those claiming protection as whistleblowers. Bryant, 597 F.3d at 687.  Ybarra expressly claims that his conspiracy claim is based upon his status as a whistleblower. Dkt. No. 31, p. 6.  Thus, this claims fail as a matter of law.  These claims should be dismissed for failure to state a claim upon which relief can be granted.

### D. Prohibited Personnel Practices Act

Ybarra alleges that Perry, De Luna, and Gomez violated the Prohibited Personnel Practices Act when they "acted under the color of law to deceive and willfully obstruct Plaintiff with respect to his right to compete for employment" and when they acted "in concert to provide false and harmful statements to Texas Health and Human Services employees, Adela M. Gonzalez and Jay Wong, in order to damage Mr. Ybarra's reputation as a valuable employee." Dkt. No. 22, p. 10.

The statute, by its express terms, only applies to actions taken against a federal employee or applicant for federal employment. 5 U.S.C. § 2302(b)(1).  If the plaintiff "is a

former employee and is not an applicant for employment with the [federal] government," then this statute is inapplicable. <u>Amarille v. Office of Pers. Mgmt.</u>, 28 F. App'x 931, 933 (Fed. Cir. 2001). Thus, the Prohibited Personnel Practices Act does not cover any actions taken by Perry, De Luna, or Gomez, after Ybarra left federal employment. <u>Id.</u>

To the extent that any of these actions took place while Ybarra was a federal employee, his remedy lies with an administrative appeal as part of the Civil Service Reform Act. <u>See</u> <u>Mahtesian v. Lee</u>, 406 F.3d 1131, 1134 (9th Cir. 2005) (holding that claims made by federal employees pursuant to 5 U.S.C. § 2302(b) are subject to the administrative proceedings outlined by the CSRA). Accordingly – even assuming such timing – Ybarra fares no better, because the Court would lack subject matter jurisdiction over such claims.

Thus, as presented, Ybarra's complaint fails to state a claim upon which relief can be granted against any defendant.

**E. Bivens**

Ybarra claims that Perry, De Luna, and Gomez, violated his First Amendment right to free speech when they made "false and harmful" statements to THHSC employees to damage his employment prospects. Dkt. No. 22, pp. 10-11. Yet again, Ybarra has failed to state a claim upon which relief can be granted.

As previously noted, Bivens is a judicially created remedy. <u>Bivens</u>, 403 U.S. at 396-97. It is also a "disfavored" remedy, because it creates a remedy in a space that Congress has chosen not to act. <u>Abbasi</u>, — U.S. —, 137 S. Ct. at 1857. The Fifth Circuit has recognized that "the Supreme Court strongly cautioned against extending Bivens to new contexts. [. . .] [a] First Amendment claim is likely a new context." <u>Brunson v. Nichols</u>, 875 F.3d 275, 279 n. 3 (5th Cir. 2017).

"[A] <u>Bivens</u> remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." <u>Abbasi</u>, 137 S. Ct. at 1857 (internal quotations omitted). "In sum, the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate

judicial deference to indications that congressional inaction has not been inadvertent." Schweiker v. Chilicky, 487 U.S. 412, 423 (1988).  This means that, if Congress has enacted a statutory scheme to cover certain wrongs, Bivens should not apply in that general context, even if that statutory scheme does not provide a remedy for the specific wrong claimed by the plaintiff. Id; Lombardi v. Small Bus. Admin., 889 F.2d 959, 961 (10th Cir. 1989) ("the Court will not create a Bivens remedy in a Federal employment action even if no remedy at all has been provided" by other statutes that govern federal employee's rights).

The Supreme Court has previously concluded that, when "claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," there is no Bivens remedy. Bush v. Lucas, 462 U.S. 367, 368 (1983) (emphasis added).  The Fifth Circuit has observed that this holding also applies to former federal employees seeking re-employment. Carroll v. United States, 721 F.2d 155, 156 (5th Cir. 1983).  Numerous federal courts have held that the language of Bush – concerning claims that "arise out of an employment relationship" – is so broad that it covers claims made by ex-federal employees for wrongs taken by co-worker and supervisory defendants and extends to wrongs that occurred after the plaintiff left federal employment. Lombardi v. Small Bus. Admin., 889 F.2d 959, 961 (10th Cir. 1989); Yu v. U.S. Dep't of Veterans Affairs, 528 F. App'x 181, 184 (3d Cir. 2013); Sarullo v. U.S. Postal Serv., 352 F.3d 789, 795 (3d Cir. 2003); Hall v. Clinton, 235 F.3d 202, 204 (4th Cir. 2000); Jones v. Tennessee Valley Auth., 948 F.2d 258, 264 (6th Cir. 1991); Saul v. United States, 928 F.2d 829, 840 (9th Cir. 1991); Marshall v. O'Conner, No. CIV. A. 90-1214, 1991 WL 61744, at *6 (E.D. La. Apr. 16, 1991); Deaton v. Plowman, No. 192CV027SD, 1996 WL 33370667, at *4 (N.D. Miss. Mar. 31, 1996)

In short, if any claims made by a plaintiff "arise out of an employment relationship" with the federal government, then Bivens is not an available remedy.  Congress provided "the full scheme of remedies" available to aggrieved former federal employees when it passed the CSRA. Sarullo, 352 F.3d at 795.  Moreover, given the scope of the act and the decisions of

20

the Supreme Court, even if the CSRA does not provide a specific remedy for Ybarra, <u>Bivens</u> is still inapplicable.

Thus, all <u>Bivens</u> claims made by Ybarra against any defendant should be dismissed for failure to state a claim upon which relief can be granted.

### F. § 1983

Ybarra asserts that Wong and Gonzalez violated his constitutional rights when they shared "negative information obtained improperly and of which they have no confirmation." Dkt. No. 22, p. 12.  As with the previously discussed claims, here also, Ybarra has failed to state a claim upon which relief can be granted.

It is not clear from the complaint the exact basis for Ybarra's § 1983 claim.  It appears that Ybarra is claiming that he was wrongfully terminated from his employment as retaliation for testifying against Perry and Mock. Dkt. No. 31, p. 10.  In other words, Ybarra seems to be claiming  retaliatory discharge.

"To establish a retaliatory discharge claim under the First Amendment, the plaintiff must prove that: (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency (balancing under <u>Pickering v. Board of Education</u>, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)), and (4) his speech was a substantial or motivating factor behind the defendant's actions." <u>James v. Texas Collin Cty.</u>, 535 F.3d 365, 375-76 (5th Cir. 2008).

As noted in the earlier discussion about retaliation, Ybarra has pled facts showing that he suffered an adverse employment action, which was the termination of his employment. Furthermore, Ybarra's speech – the testimony against Perry and Mock – was on a matter of public concern. <u>Branton v. City of Dallas</u>, 272 F.3d 730, 740 (5th Cir. 2001) ("There is perhaps no subset of `matters of public concern' more important, [for purposes of First Amendment protection of speech of public employees,] than bringing official misconduct to light.") (brackets original).  At this point in the proceedings, Ybarra has pled sufficient facts

to show that his interest in commenting outweighed the defendant's interest in efficiency. Thus, Ybarra has pled sufficient facts to state a claim as to the first three elements. Where Ybarra's claim fails is that he has not pled any facts as to the fourth element.

There have been no facts pled showing that Gonzalez, Wong, or any other THHSC employee was motivated in any way by a desire to retaliate against Ybarra for his prior testimony. Ybarra has pled no statements by any person showing that Gonzalez or Wong was even aware of Ybarra's prior testimony. See Tharling v. City of Port Lavaca, 329 F.3d 422, 428 (5th Cir. 2003) ("It is axiomatic that a party cannot be 'substantially motivated' by a circumstance of which that party is unaware."). The email from Battles to Gonzalez does not mention Ybarra's prior testimony. Ybarra's subjective belief that Gonzalez and Wong were motivated by Ybarra's prior testimony is insufficient to state a claim for retaliation. See Hervey v. Mississippi Dep't of Educ., 404 F. App'x 865, 870 (5th Cir. 2010) ("subjective beliefs of discrimination cannot be the basis for judicial relief.").

Thus, Ybarra has failed to plead any facts showing a plausible claim that Wong or Gonzalez were motivated to discriminate against him based upon his prior testimony. For that reason, he fails to state a claim upon which relief can be granted.

### G. Conversion

Ybarra claims that Gonzalez, Wong, and De Luna "took and never returned the personal property of Mr. Ybarra[]" after his employment was terminated. Dkt. No. 22, pp. 12-13. Given that De Luna is a federal employee and Gonzalez and Wong are state employees, there are different laws applying to this claim and they will be addressed separately.

#### 1. De Luna

As to De Luna, the Court lacks subject matter jurisdiction over this claim. A plaintiff may not sue a federal employee for the "loss of property" if that employee was acting "within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). If the actions were taken within the scope of the employee's duties, then the United States is the proper defendant. §

2679(d)(1).

Whether De Luna was acting within the scope of his employment is controlled by Texas law. Rankin, 556 F. App'x at 308. Under Texas law, an employee is acting within the course and scope of his employment if "the conduct occurred (1) within the general authority given the employee, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which the employee was employed." Zarzana v. Ashley, 218 S.W.3d 152, 159 (Tex. App. 2007). For federal employees, the Attorney General has the statutory authority to certify that the employee was acting within the scope of his duties; that certification is subject to judicial review. 28 U.S.C. § 2679(d)(1); Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432 (1995).

In this case, De Luna has provided the Court with an certification signed by the U.S. Attorney as well as a sworn declaration which he, De Luna, has signed. Dkt. Nos. 42-1, 45-1. In his declaration, De Luna states that Gonzalez informed him that while she was cleaning out Ybarra's office, "she found sensitive documents that appeared to belong" to U.S. Customs and Border Protection. Dkt. No. 45-1, p. 1. De Luna states that he went to the THHSC offices, upon the direct order of his supervisor, to review the documents. Id, p. 2. He said he set aside "the sensitive CBP materials in one pile" and the remaining documents in another pile. Id. De Luna states he left all of the documents at THHSC with the understanding that THHSC "intended to send the documents that had been identified as belonging to CBP back to CBP and to send the remaining documents back to" Ybarra. Id.

Based upon the certification, as well as De Luna's sworn affidavit, it appears clear that De Luna was acting within the scope of his employment when he acted upon the direction of his superiors. He acted within his general authority – he was expressly asked by his supervisor to undertake these actions. He acted in furtherance of his employer's objectives to protect sensitive information and his actions were taken "for the accomplishment of the object for which the employee was employed."

Ybarra argues that "[t]he illegal act of conversion is not within [De Luna's] duties at

23

ICE." Dkt. No. 44, p. 15.  This argument misapprehends the nature of this issue.  The question before the Court is not whether De Luna acted appropriately; the question is whether he was acting within the scope of his duties.  Given that De Luna was asked by his supervisor to review Ybarra's property, it appears beyond dispute that he was acting within the scope of his federal employment when he did so.  City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994) (official is acting within scope of authority if he is "discharging the duties generally assigned" to him).  Accordingly, the United States should be substituted as the proper defendant. 28 U.S.C. § 2679(d)(1).

Because the United States is the proper defendant for the claims against De Luna, Ybarra's claims must be made pursuant to the Federal Tort Claims Act ("FTCA").  See In re Supreme Beef Processors, Inc., 468 F.3d 248, 252 (5th Cir. 2006) (describing the FTCA as "an exclusive vehicle for the assertion of tort claims for damages against the federal government.").  Pursuant to the FTCA, a plaintiff must file an administrative claim as a precursor to any litigation; absent the exhaustion of administrative remedies, the Court lacks subject matter jurisdiction. In re Complaint of Ingram Barge Co., 351 F. App'x 842, 843 (5th Cir. 2009).

There is no evidence in the record that Ybarra filed any administrative claims against the United States for the return of his property.  Based upon the law and those facts, the Court lacks subject matter jurisdiction and this claim should be dismissed without prejudice to refiling.

### 2. Gonzalez and Wong

Ybarra claims that Gonzalez and Wong acted under color of law when they committed conversion. Dkt. No. 22.  This claim is barred by the Texas Tort Claims Act.

Under Texas law, "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." TEX. CIV. PRAC. & REM. CODE §

101.106(f).  "[T]he statute strongly favors dismissal of the governmental employees" from lawsuits. <u>Waxahachie Indep. Sch. Dist. v. Johnson</u>, 181 S.W.3d 781, 785 (Tex. App. 2005). The Court must consider: (1) whether Gonzalez and Wong were acting within the general scope of their employment; and (2) whether this suit could have been brought against THHSC.

Under the Texas Tort Claims Act, "scope of employment" is defined as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5).  It does not matter if the actions were "conducted with improper motives or in an improper manner," so long as they are within a task lawfully assigned to the employee. <u>Tipps v. McCraw</u>, 945 F. Supp. 2d 761, 767 (W.D. Tex. 2013).

By the terms of the complaint, Gonzalez and Wong refused to return personal possessions that they found in Ybarra's office after his employment was terminated. Dkt. No. 22, pp. 12-13.  Cleaning out the office of an employee who was fired would fall within the definition of "a task lawfully assigned to an employee by competent authority." § 101.001(5). Even if the withholding of this property is being done with "improper motives," it does not change the fact that the act of it is within the scope of their assigned duties. <u>See</u> <u>Fink v. Anderson</u>, 477 S.W.3d 460, 466 (Tex. App. 2015) ("Conduct that serves <u>any</u> purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted.") (emphasis added).  Thus, Gonzalez and Wong were acting within the general scope of their employment.

As to whether this suit could have been brought against THHSC under the Texas Tort Claims Act, the Court must take a broad view of this question.  The Texas Supreme Court has held that "all tort theories alleged against a governmental unit" – regardless of whether any such claim would actually be successful – "could have been brought" under the Texas Tort Claims Act. <u>Franka v. Velasquez</u>, 332 S.W.3d 367, 378 (Tex. 2011).  Because

ecase 1:17-cv-00174

conversion is a common law tort, it falls within the parameters of the Texas Tort Claims Act. City of Houston v. Petroleum Traders Corp., 261 S.W.3d 350, 361 (Tex. App. 2008). Thus, Ybarra's claims "could have been brought under this chapter against" THHSC.

Because Gonzalez and Wong were acting within the general scope of employment and Ybarra could have brought his claims against THHSC, then the claims are made against Gonzalez and Wong solely in their official capacities. TEX. CIV. PRAC. & REM. CODE § 101.106(f). A claim under the Texas Tort Claims Act against an individual in their official capacity is a suit against the governmental employer. Alexander v. Walker, 435 S.W.3d 789, 791 (Tex. 2014). Thus, Ybarra's claims are against the Texas Health and Human Services Commission.

At the same time, the Texas Tort Claims Act does not waive immunity for intentional torts. City of Fort Worth v. Deal, No. 02-17-00413-CV, 2018 WL 2440387, at *1 (Tex. App. May 31, 2018) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Conversion is considered an intentional tort for purposes of the Texas Tort Claims Act. Old S. Amusements, Inc. v. City of San Antonio, No. 04-09-00466-CV, 2010 WL 2772444, at *2 (Tex. App. July 14, 2010).

Thus, the Texas Tort Claims Act bars any claim made by Ybarra against Gonzalez and Wong. In such circumstances, the Court lacks subject matter jurisdiction. Aguocha-Ohakweh v. Harris Cty. Hosp. Dist., No. 17-20259, 2018 WL 2077907, at *3 (5th Cir. May 3, 2018). Thus, as with the claim against De Luna, the claims against Gonzalez and Wong should be dismissed without prejudice for lack of subject matter jurisdiction.

## IV. Recommendation

It is recommended that the motions to dismiss filed by Defendants Texas Health and Human Services Commission, Adela Gonzalez, Jay Wong, Jorge Perry, Fernando De Luna and Mario Gomez be granted. Dkt. Nos. 25, 27, 42.

Specifically, it is recommended that the claims against any and all defendants for (1) unlawful retaliation; (2) discrimination based on sex; (3) § 1985 conspiracy to interfere with

Ybarra's civil rights; (4) violations of the Prohibited Personnel Practices Act; (5) <u>Bivens</u> civil rights violations; and (6) 42 U.S.C. § 1983 civil rights violations be dismissed with prejudice for failure to state a claim upon which relief can be granted.

It is further recommended that the claim of conversion against Gonzalez, Wong and De Luna be dismissed without prejudice for lack of subject matter jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge.  28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to file timely objections shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. <u>See</u> § 636(b)(1); <u>Thomas v Arn</u>, 474 U.S. 140, 149 (1985); <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996) superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on June 13, 2018.

_____
Ronald G. Morgan
United States Magistrate Judge